No. 18-3349

In the

# United States Court of Appeals
## for the Seventh Circuit

HUMBERTO TRUJILLO,

*Plaintiff-Appellant,*

v.

ROCKLEDGE FURNITURE LLC
doing business as ASHLEY FURNITURE HOMESTORE,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division, No. 1:17-cv-05343
The Honorable **Virginia M. Kendall**, Judge Presiding.

**BRIEF AND REQUIRED SHORT APPENDIX OF PLAINTIFF-APPELLANT**

LINDA D. FRIEDMAN
MATTHEW J. SINGER (COUNSEL OF RECORD)
**STOWELL & FRIEDMAN, LTD.**
303 W. Madison Street
Suite 2600
Chicago, Illinois 60606
(312) 431-0888

*Attorneys for Plaintiff-Appellant*

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 18-3349

Short Caption: Trujillo v. Rockledge Furniture LLC d/b/a Ashley Furniture Homestore

   To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

   The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

   **[    ]    PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)  The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P 26.1 by completing item #3):

   Humberto Trujillo

(2)  The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

   Stowell & Friedman, Ltd.

   303 W. Madison, Suite 2600

   Chicago, Illinois 60606

(3)  If the party or amicus is a corporation:

   i)  Identify all its parent corporations, if any; and

      n/a

   ii) list any publicly held company that owns 10% or more of the party's or amicus' stock:

      n/a

Attorney's Signature: s/ Matthew J. Singer          Date: 1/29/19

Attorney's Printed Name: Matthew J. Singer

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).  **Yes** ✕  **No** _____

Address: 303 W. Madison Street, Suite 2600

   Chicago, Illinois  60606

Phone Number: 312-431-0888          Fax Number: 312-431-0228

E-Mail Address: MSInger@sfltd.com

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 18-3349

Short Caption: Trujillo v. Rockledge Furniture d/b/a Ashley Furniture Homestore

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

**[   ]   PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1) The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P 26.1 by completing item #3):

Humberto Trujillo

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Stowell & Friedman, Ltd.

303 W. Madison, Suite 2600

Chicago, IL 60606

(3) If the party or amicus is a corporation:

i) Identify all its parent corporations, if any; and

N/A

ii) list any publicly held company that owns 10% or more of the party's or amicus' stock:

N/A

Attorney's Signature: s/ Linda D. Friedman     Date: 11/05/18

Attorney's Printed Name: Linda D. Friedman c/o Stowell & Friedman, Ltd.

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   **Yes** _____   **No** ⨯

Address: 303 W. Madison, Suite 2600

Chicago, IL 60606

Phone Number: 312-431-0888     Fax Number: 312-431-0228

E-Mail Address: lfriedman@sfltd.com

rev. 01/15 GA

# TABLE OF CONTENTS

Disclosure Statements ................................................................................. i

Table Of Contents ...................................................................................... iii

Table Of Authorities .................................................................................. iv

Jurisdictional Statement ............................................................................. 1

Issues Presented for Review ...................................................................... 4

Statement of the Case ................................................................................. 5

    I.     Facts Underlying Trujillo's Age Discrimination and Retaliation Claims. ............ 5

    II.    Facts Relating to Trujillo's EEOC Charge and Exhaustion of Remedies. ............ 6

    III.   Proceedings Before the District Court ................................................ 10

Summary of Argument ............................................................................. 13

Standard of Review .................................................................................. 15

Argument ................................................................................................. 15

    I.     The ADEA Should Not Be Construed As Establishing Unnecessary Hurdles for Employees Alleging Age Discrimination. ........................................ 15

        A.    EEOC Charges Should Be Construed Generously, Especially Because the ADEA Does Not Require a Right-to-Sue Letter or EEOC Action. ................................................... 15

        B.    Dismissals Based On Affirmative Defenses Are Disfavored. ................ 18

    II.    Trujillo Exhausted His Administrative Remedies Under The ADEA. ................ 19

        A.    Trujillo Identified The Correct Entity In His Charge. ............................ 19

        B.    Trujillo's Claims Should Not Be Foreclosed Due to the EEOC's Errors. ................................................................ 22

        C.    Rockledge Was on Notice of Trujillo's Charge. ................................... 27

Conclusion ............................................................................................... 33

# TABLE OF AUTHORITIES

## Cases

*Aguirre v. McCaw RCC Commc'ns, Inc.*, 923 F. Supp. 1431
(D. Kan. 1996)........................................................................................ 22

*Babrocky v. Jewel Food Co.*, 773 F.2d 857 (7th Cir. 1985)................................ 15, 21, 24

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ............................................. 19

*Beverly v. Lone Star Lead Constr. Corp.*, 437 F.2d 1136
(5th Cir. 1971) .................................................................................... 26

*Cheek v. Western and Southern Life Ins. Co.*, 31 F.3d 497
(7th Cir. 1994) .................................................................................... 25

*Chicago Bldg. Design, P.C. v. Mongolian House, Inc.*, 770 F.3d 610
(7th Cir. 2014) .................................................................................... 19

*DeLa Cruz v. Piccari Press*, 521 F. Supp. 2d 424 (E.D. Pa. 2007)............................... 27

*Delgado v. Merit Sys. Prot. Bd.*, 880 F.3d 913 (7th Cir. 2018) ..................................... 25

*Doe v. Oberweis Diary*, 456 F.3d 704 (7th Cir. 2006) ......................................... 16

*Edelman v. Lynchburg College*, 300 F.3d 400.................................................... 26

*EEOC v. AIC Sec. Investigations, Ltd.*, 55 F.3d 1276 (7th Cir. 1995)......................... 31

*EEOC v. Commercial Office Prods. Co.*, 486 U.S. 107 (1988)................................. 16

*Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130*,
657 F.2d 890 (7th Cir. 1981) ............................................................ passim

*Erickson v. Pardus*, 551 U.S. 89 (2007) ......................................................... 19

*Federal Express Corp. v. Holowecki*, 552 U.S. 389 (2008) .......................... 16, 17, 25, 31

*Garner v. Knoll Bros. Quick Marts, Inc.*, 962 F. Supp. 1115
(N.D. Ind. 1997)................................................................................. 28, 32

*Geinosky v. City of Chicago*, 675 F.3d 743 (7th Cir. 2012) ............................................ 7

*Harris v. Stallman Trucking Co.*, 951 F. Supp. 134 (N.D. Ill. 1997)................ 28, 29, 31

*Hodge v. N.Y. Coll. Of Podiatric Med.*, 157 F.3d 164 (2d Cir. 1998) ..................... 17, 18

*Holender v. Mutual Indus. North Inc.*, 527 F.3d 352 (3d Cir. 2008)........................... 26

*Holowecki v. Federal Express Corp.*, 440 F.3d 558 (2d Cir. 2006) ............................... 24

*Huri v. Office of the Chief Judge of the Cir. Ct. of Cook Cty.*, 804
F.3d 826 (7th Cir. 2015) ................................................... 15, 16, 19, 21

*Husch v. Szabo Food Service Co.*, 851 F.2d 999 (7th Cir. 1988) .................................. 16

*Jones v. Illinois*, No. 10-cv-7200, 2011 WL 2110278
(N.D. Ill. May 25, 2011) ..................................................... 29

*Jones v. U.P.S., Inc.*, 502 F.3d 1176 (10th Cir. 2007) ...................................... 26

*Kawczynski v. F.E. Moran, Inc. Fire Prot.*, No. 15-cv-3099,
2015 WL 4871029 (N.D. Ill. Aug. 13, 2015) ........................... 31

*Kopec v. City of Elmhurst*, 966 F. Supp. 640 (N.D. Ill. 1997) .................... 18, 21

*Lopez v. Cardinal Health 411, Inc.*, No. 12-cv-8739,
2013 WL 1768699 (N.D. Ill. Apr. 24, 2013) ......................... 28, 29

*McClease v. R.R. Donnelley & Sons Co.*, 226 F. Supp. 2d 695
(E.D. Pa. 2002) ................................................................. 27

*McCorvey v. Univ. of Texas Health Sci. Ctr. at San Antonio*,
No. 5:16-cv-631, 2016 WL 8904949 (W.D. Tex. Dec. 21, 2016) ......................... 26

*McDonald v. Adams & Assocs. LLC*, No. 14-cv-4647,
2015 WL 110152 (N.D. Ill. Jan. 7, 2015) .............................. 25

*Oscar Mayer & Co. v. Evans*, 441 U.S. 750 (1979) ........................... 18

*Pizio v. HTMT Global Sols.*, 555 Fed. App'x 16 (3d Cir. 2014) ...................... 26

*Queen v. U.S. Sec. Assocs.*, No. 09-cv-1770, 2010 WL 547525
(E.D. Pa. Feb. 9, 2010) ..................................................... 26

*Rohler v. Rolls-Royce N. Am., Inc.*, No. 1:13-cv-00040,
2014 WL 1256009 (S.D. Ind. Mar. 25, 2014) ......................... 29

*Santos v. Rush-Presbyterian-St. Luke's Med. Ctr.*, 641 F. Supp. 353
(N.D. Ill. 1986) ................................................................ 24

*Stearns v. Consolidated Mgmt., Inc.*, 747 F.2d 1105 (7th Cir. 1984) .................. 16, 18

*Swanson v. Citibank, N.A.*, 614 F.3d 400 (7th Cir. 2010) ............................. 18

*Vakharia v. Sweidsh Covenant Hosp.*, 824 F. Supp. 769
(N.D. Ill. 1993) ................................................................ 31

*Veazey v. Communications & Cable of Chicago, Inc.*, 194 F.3d 850
(7th Cir. 1999) ................................................................. 7

*Virgo v. Riviera Beach Assocs., Ltd.*, 30 F.3d 1350 (11th Cir. 1994) ................. 22

*Washington v. Client Network Servs., Inc.*, 590 Fed. App'x 126
(3d Cir. 2014) ................................................................. 17

*Xechem, Inc. v. Bristol-Myers Squibb Co.*, 372 F.3d 899
(7th Cir. 2004) ................................................................ 19

*Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385 (1982) ............................. 16

**Statutes**

28 U.S.C. § 1291 ................................................................................................ 1

28 U.S.C. § 1331 ................................................................................................ 1

28 U.S.C. § 1332 ................................................................................................ 1

28 U.S.C. § 1343 ................................................................................................ 1

28 U.S.C. § 1367 ................................................................................................ 1

29 C.F.R. § 1626.11 ......................................................................................... 23

29 U.S.C. § 621 *et seq* .................................................................................... 1

29 U.S.C. § 626(d)(1) ...................................................................................... 17

29 U.S.C. § 626(d)(2) ...................................................................................... 23

42 U.S.C. § 2000e-5(f)(1) ............................................................................... 17

**Rules**

Federal Rule of Civil Procedure 8(a) ............................................................. 18

Federal Rule of Civil Procedure 54(b) ...................................................... 1, 2, 3

**Other Authorities**

113 Cong Rec. 7076 (1967) ............................................................................ 18

## Jurisdictional Statement

(1) The District Court had jurisdiction over Plaintiff-Appellant Humberto Trujillo's ("Appellant" or "Trujillo") claims pursuant to 28 U.S.C. §§ 1331 and 1343 because they arose under the federal civil rights laws, in particular, the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 to 634.  In addition, the District Court had supplemental jurisdiction over Trujillo's state-law claim under the Illinois Human Rights Act, 28 U.S.C. § 1367.  Finally, the District Court had diversity jurisdiction over Trujillo's claims pursuant to 28 U.S.C. § 1332, as Trujillo and his co-Plaintiffs are all citizens of Illinois, Defendant-Appellee Rockledge Furniture LLC ("Rockledge") is a Wisconsin LLC whose sole member is Ashley Furniture Industries Inc., a corporation incorporated in Wisconsin with its principal place of business in Wisconsin, and the amount in controversy exceeds $75,000.  (Compl.,[1] Dkt. 43,[2] ¶ 2.)

(2) The Seventh Circuit has jurisdiction over this matter pursuant to 28 U.S.C. § 1291 and Federal Rule of Civil Procedure 54(b), as explained further below:

> (i)  Trujillo was one of four Plaintiffs in this case. Rockledge moved to dismiss the Second Amended Complaint as to Trujillo's claims only, on the ground that he failed to properly exhaust his administrative remedies. (Dkt. 44.)

---

[1]  Trujillo cites the operative complaint, the Second Amended Complaint (Dkt. 43) as the "Complaint" or "Compl."

[2]  Trujillo cites to the District Court docket as "(Dkt. __.)"

(ii)    On July 10, 2018, the District Court issued an Order granting Rockledge's motion, dismissing Trujillo's claims on grounds of failure to exhaust administrative remedies, and entered a Judgment purporting to terminate Trujillo's civil case.  (S.A. 1–3; Dkt. 55.[3])  The claims against the three remaining Plaintiffs remained pending.  The District Court's Order did not include any language expressly determining that there was no just reason for delay of an appeal, or otherwise addressing Federal Rule of Civil Procedure 54(b).

(iii)    On July 16, 2018, Trujillo filed a motion requesting that the Court enter an order expressly determining that there was no just reason for delay of an appeal under Federal Rule of Civil Procedure 54(b).  Trujillo explained that "[n]o purpose would be served by requiring Trujillo to wait until his co-Plaintiffs' claims are resolved on the merits to appeal the Court's ruling on exhaustion, which applies only to his case."  (Dkt. 56, ¶ 6.)  The District Court ordered full briefing on Trujillo's request, which Rockledge did not oppose.  (Dkt. 60, 61.)

(iv)    On October 29, 2018, the District Court granted Trujillo's motion and expressly determined that there was no just reason to delay appeal of the Court's dismissal of his claims.  The

---

[3]   Trujillo cites the Short Appendix as "S.A. __."

District Court wrote that the issue of whether "Trujillo properly exhausted all administrative remedies . . . is not implicated in any of the individual Plaintiffs' remaining claims and this Court need not revisit its ruling on Trujillo's claims to resolve any others going forward.  Because none of the claims remaining before this Court are 'substantively intertwined' with the exhaustion issue Trujillo seeks to appeal, there is no just reason for delaying entry of final judgment." (S.A. 15–16.)  As a result of the Court's October 29, 2018, Order, the Court's July 10, 2018 dismissal of Trujillo's claims became appealable under Federal Rule of Civil Procedure 54(b).

(v)    The following day, October 30, 2018, Trujillo timely filed his Notice of Appeal to this Court.  (Dkt. 64.)

The claims of Trujillo's three co-Plaintiffs remain pending before the District Court and discovery is ongoing.  As the District Court ruled in its October 29, 2018, Order, the exhaustion ruling Trujillo seeks to appeal is final as to his claims and is unrelated to the claims of the remaining three Plaintiffs in the District Court.  (Dkt. 63.)

## Issues Presented for Review

1. Whether an employee adequately exhausts his administrative remedies under the ADEA where: (a) his EEOC charge identified his employer by the name under which it did business in Illinois; (b) his EEOC charge identified the address and phone number of his employer; (c) he informed the EEOC of the formal legal name and headquarters contact information of his employer; but (d) the EEOC nonetheless served a different entity in Texas and then dismissed his charge for "no Employee/Employer relationship."

2. Whether an employer can obtain dismissal of age discrimination and retaliation claims for failure to exhaust administrative remedies where: (a) the executive who orchestrated the employee's firing was aware of the claims; (b) three similar charges addressing the same alleged pattern of discrimination were shared with the employer's counsel and then filed with the EEOC; (c) the employer refused to conciliate all of the related claims; and (d) the employee would otherwise be deprived of the opportunity for complete redress of his legitimate grievances.

## Statement of the Case

### I.   Facts Underlying Trujillo's Age Discrimination and Retaliation Claims.

Trujillo was 51 years old when the operative complaint was filed.  (Compl. ¶ 6.)  Before and during his employment with Rockledge, he built a successful career as a manager of retail furniture stores.  (*Id.* ¶¶ 6, 12–14.)  During nearly a decade working for Rockledge, he successfully "opened" and managed three new Ashley Furniture HomeStores in Illinois.  (*Id.* ¶¶ 12–14, 32.)

The trouble for Trujillo and his older colleagues began in late 2015, when Rockledge underwent a corporate realignment.  (*Id.* ¶ 15.)  Rockledge brought in a new management team with a singular focus on hiring and promoting Millennials to management positions.  (*Id.* ¶¶ 16–22.)  At a memorable meeting in December 2015, Rockledge's new upper management team described its efforts to alter the age profile of Ashley Furniture HomeStore's store managers.  (*Id.*)  The new management team pointed to the Florida market as a positive example of where Ashley Furniture HomeStore had successfully changed the "look" of the store's managers by hiring mostly younger people.  (*Id.* ¶ 17.)  They shared an anecdote of encountering a young server at a restaurant and encouraging her to apply for a managerial position because she "came across as someone we would hire."  (*Id.* ¶ 18.)  They made clear that, under the new leadership team, managers would be expected to aggressively recruit and hire younger people.  (*Id.* ¶¶ 19–20, 22.)  After the presentation, Trujillo and his store manager colleagues expressed concerns about what had been discussed, worrying that Rockledge was pushing them to hire younger people and would groom the new recruits to take their jobs.  (*Id.* ¶ 21.)

Trujillo and his fellow current managers understood that the new leadership team was communicating that they were too old for their jobs. (*Id.*)

Around the same time, Rockledge assigned a young Sales Manager, who had been described as an "HR nightmare" to report to Trujillo. (*Id.* ¶ 23.) The young Sales Manager failed to perform her basic job duties and repeatedly missed work without an excuse. (*Id.* ¶¶ 24–28.) Trujillo complained to human resources and to management about the young Sales Manager's intolerable behavior. (*Id.* ¶ 25.) Rather than disciplining her, however, Rockledge promoted her. (*Id.* ¶¶ 26–27.) Ultimately, despite Rockledge's efforts to please her, the young Sales Manager abandoned her job. (*Id.* ¶ 28.) Almost immediately thereafter, Rockledge performed an unscheduled "store audit" that was used to falsely and pretextually justify Trujillo's firing in March 2016. (*Id.* ¶ 30.)

Trujillo claims that Rockledge fired him because of his age, as a result of Rockledge's effort to drive its older managers out of the company in favor of younger Millennials, and in retaliation for Trujillo's complaints about the younger Sales Manager.[4] (*Id.* ¶ 31.) Indeed, the month of Trujillo's firing, Rockledge demoted the three other Plaintiffs from management positions to make way for younger managers. (*Id.* ¶ 11.)

## II.    Facts Relating to Trujillo's EEOC Charge and Exhaustion of Remedies.

Just before this brief was filed, Rockledge produced — as part of the ongoing case involving the other three Plaintiffs — new information bearing directly on this

---

[4]    Trujillo also claims he was illegally denied a promotion on account of his age. (Compl. ¶¶ 32–33.)

appeal.[5]  The new document, attached as Exhibit A to Trujillo's Short Appendix, shows that Lindsey Higgins, the human resources executive who orchestrated Trujillo's firing, received an email directly from Trujillo's prior counsel before the EEOC charge was filed.  (S.A. 18.)  In the email, Trujillo's prior counsel asked Higgins to "advise if you would be our point of contact, and if not please direct me as to whom would be our point of contact."  (*Id.*)  A letter was attached to the email, advising Higgins that Trujillo believed his firing violated the ADEA's prohibitions on age discrimination and retaliation.  (S.A. 19–21.) The letter requested that Higgins call Trujillo's prior counsel at his "earliest convenience to discuss [his] interest in resolving these issues."  (*Id.*)

Higgins never responded, so Trujillo's prior counsel then filed an EEOC charge in May 2016, cross-filed with the Illinois Department of Human Rights ("IDHR"). (Compl. ¶ 35 & Ex. A.)  That EEOC charge identified his employer by the name "Ashley Furniture HomeStore," which was the name of the store at which Trujillo worked.  (Compl. ¶¶ 5, 36–37.)  Moreover, as a foreign LLC, Rockledge was required to register with the Illinois Secretary of State to do business in the state.  *See* 805 ILCS 180/45-5, 45-45.  And because it did business under a name other than "Rockledge Furniture LLC," Rockledge was required by law to register "the name under which it proposes to transact business in" Illinois.  *Id.* at 180/45-5(a)(1). Rockledge registered the assumed name of "Ashley Furniture HomeStore —

---

[5]    "A party appealing a Rule 12(b)(6) dismissal may elaborate on his factual allegations so long as the new elaborations are consistent with the pleadings." *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012); *see also Veazey v. Communications & Cable of Chicago, Inc.*, 194 F.3d 850, 861 (7th Cir. 1999).

Rockledge," but dropped "Rockledge" from its name when doing business in Illinois. (Compl. ¶ 36.)  Its Illinois stores were branded simply as "Ashley Furniture HomeStores" and Rockledge presented itself to the Illinois public and did business under that name.  (*Id.*)

In addition, Trujillo's charge correctly informed the EEOC of the Illinois phone number, with a "708" Chicago-suburbs area code, of the Ashley Furniture HomeStore where he worked.  (*Id.* ¶ 37 & Ex. A.)  Trujillo's charge also correctly informed the EEOC of the Illinois address of the Ashley Furniture HomeStore where he worked.  (*Id.* ¶ 37 & Ex. A.)

Nonetheless, the EEOC never contacted anyone at the address or phone number Trujillo provided.  (*Id.* ¶ 38 & Ex. B.)  Instead, the EEOC attempted to serve Trujillo's charge on an entity in Texas named Hill Country Holdings, LLC ("Hill Country").  (*Id.* ¶ 38 & Ex. B, p. 25)  Hill Country responded to the EEOC in June 2016, explaining that Trujillo was not its employee and that it did not do business in Illinois.  (*Id.*)  After learning that it served Trujillo's charge on the wrong entity, the EEOC took no action for nearly 10 months.  (*Id.* ¶¶ 38, 39, 45 & Ex. B, p. 2.)

In April 2017, the EEOC emailed Trujillo's prior counsel, writing that "Ashley Furniture" — really, Hill Country — responded that Trujillo is "not an employee of theirs, and that they only have stores in Austin, Houston, and San Antonio, Texas." (*Id.* ¶ 45 & Ex. B, pp. 17–20.)  The EEOC asked Trujillo's prior counsel to "provide any and all evidence that Mr. Trujillo was an employee of Ashley Furniture HomeStore" and "any information . . . to assist us with serving his charge to the

correct Respondent for a response." (*Id.*)  A few days later, Trujillo's prior counsel sent the EEOC Trujillo's paystub, which had Rockledge's full name and corporate address.  (*Id.*)  Trujillo's prior counsel explained that Rockledge is "an Ashley Furniture Franchise" and that the charge identified the location where Trujillo worked.  (*Id.*)

Despite receiving Rockledge's full name and headquarters address — in addition to the phone number and address for the store where Trujillo worked — the EEOC never served anyone using any of the contact information Trujillo provided.  (*Id.* ¶ 45.)  The EEOC served only Hill Country, a Texas entity that was not mentioned in Trujillo's charge.  Instead of serving the proper party, using the correct contact information that Trujillo's counsel provided, the EEOC closed its file in April 2017 and issued a Notice of Right to Sue stating "No Employee/Employer Relationship." (*Id.* ¶ 45 & Ex. B, p. 5.)

The prior summer, in July 2016, while Trujillo's charge of discrimination was languishing before the EEOC, the three other Plaintiffs engaged their current counsel.  (*Id.* ¶ 40.)  Plaintiffs' counsel sent a letter to Rockledge's General Counsel advising that "[w]e believe that our clients have meritorious claims of age discrimination and that Ashley Furniture has engaged in a pattern and practice of discriminating against and constructively discharging older workers." (*Id.*)  The General Counsel responded to that letter and agreed to enter into a standstill agreement tolling the statute of limitations.  (*Id.*)  But Rockledge refused to mediate or make any settlement offer.  (*Id.* ¶¶ 40, 44.)

9

As a result of Rockledge's refusal to make a settlement offer or negotiate, the three other Plaintiffs filed charges of discrimination with the EEOC in March 2017. After being served with the EEOC charge, Rockledge refused all attempts to conciliate. (*Id.* ¶¶ 40, 42, 44.) Moreover, Rockledge's attorneys themselves were confused by Ashley Furniture's corporate structure, wrongly asserting before the EEOC that they were representing another Ashley-related entity, Stoneledge Furniture LLC. (*Id.* ¶ 42.) In addition, Trujillo filed a declaration in support of the other Plaintiffs' charges and asked the EEOC to consider his "declaration and include his complaints of age discrimination and retaliation in your investigation of the above-referenced charges" and to include Mr. Trujillo in any relief "[i]n the event that the EEOC finds in favor" of the other Plaintiffs. (*Id.* ¶ 41 & Ex. E.) Nonetheless, the EEOC conducted no investigation at all of the other three Plaintiffs' charges. (*Id.* ¶ 43 & Ex. F.) Had the EEOC investigated, it would have discovered the presence of similarly situated older managers like Trujillo, who also were removed from their positions in March 2016. (*Id.* ¶ 43.) Further, while his EEOC charge was pending, Trujillo informed a number of Rockledge employees — including store managers — that he had filed a charge alleging age discrimination and retaliation against Rockledge. (*Id.* ¶ 46.)

## III.    Proceedings Before the District Court

Trujillo filed his initial Complaint in July 2017, and in October 2017 filed an Amended Complaint that added the three other Plaintiffs. (Dkt. 1, 24.) Rockledge moved to dismiss Trujillo's claims, solely on the ground that he failed to exhaust his administrative remedies because his prior attorney did not list Rockledge Furniture

LLC as the Respondent on the cover of his EEOC charge. (Dkt. 26, 27.) The Court granted the motion without prejudice, ruling that the failure to name Rockledge on the cover page of the EEOC charge was fatal to Trujillo's claims unless Rockledge was on notice of the claims. (S.A. 4–14.) After the dismissal, Trujillo requested that the Illinois Department of Human Rights ("IDHR") reopen the investigation of his charge. (Dkt. 62, p. 2 & n.1.) The IDHR refused to investigate because Trujillo did not submit to the IDHR a copy of the EEOC's right-to-sue letter within 30 days after receiving it. Trujillo has appealed that decision to the Illinois Human Rights Commission, which is currently considering the matter. (*Id.*)

Trujillo also filed a Second Amended Complaint, alleging in further detail the facts relating to Trujillo's exhaustion of remedies and the proceedings before the EEOC. (Dkt. 43.) Rockledge filed another motion to dismiss, renewing its exhaustion argument. (Dkt. 44.) On July 10, 2018, the District Court issued an Order granting Rockledge's motion and dismissing Trujillo's claims on grounds of failure to exhaust administrative remedies, because the face of his EEOC charge did not list "Rockledge Furniture LLC" and the Complaint did not plausibly suggest that Rockledge was on notice of his charge. (S.A. 1–3.) The District Court also relinquished supplemental jurisdiction of Trujillo's state-law claim and dismissed it without prejudice.[6] (*Id.*)

---

[6]  As described above, Trujillo has asked the Illinois Human Rights Commission, the appropriate state agency, to reopen his state-law charge, an action consistent with the District Court's decision to relinquish jurisdiction of his state-law claim.

On July 16, 2018, Trujillo requested that the Court enter a Rule 54(b) Order. (Dkt. 56.)  On October 29, 2018, the Court granted Trujillo's motion, certifying that "there is no just reason for delaying entry of final judgment."  (S.A. 15–16.)  The next day, Trujillo filed his notice of appeal.  (Dkt. 64.)

## Summary of Argument

Trujillo alleges that Rockledge fired him as part of a scheme to replace its older managers with younger Millennials.  There is no dispute that his allegations, if proven, would support a finding that Rockledge unlawfully discriminated against him based on his age and retaliated against him.  But Trujillo has been denied the opportunity to pursue his claims on the merits based on the narrowest of technicalities.  The District Court dismissed Trujillo's suit solely because the cover page of his EEOC charge listed the name under which Rockledge did business — "Ashley Furniture HomeStore" — rather than Rockledge's corporate name.  In the Court's view, it did not matter that Trujillo's EEOC charge provided correct contact information for his employer; that Rockledge registered to do business in Illinois under the name "Ashley Furniture HomeStore — Rockledge"; that Trujillo's prior counsel informed the EEOC of Rockledge's full name and the contact information for its headquarters; that the EEOC ignored all the contact information Trujillo provided and instead served the charge only on an unrelated entity in Texas; or that Rockledge was on notice of Trujillo's claims, on notice of related charges filed by his co-Plaintiffs, and nonetheless refused to conciliate.  The District Court held that Trujillo's claims were doomed because the words "Ashley Furniture HomeStore" appeared on the cover page of his EEOC charge.

The District Court's decision was inconsistent with the ADEA, the purposes underlying it and the law interpreting it.  Accordingly, the ruling should be reversed.  The ADEA is remedial legislation designed to allow employees redress for discrimination based on age; accordingly, EEOC charges must be construed

generously in favor of the employee.  The exhaustion requirement is not meant to be a "get out of jail free" card for discriminatory employers when the EEOC botches its handling of a charge of discrimination.  This is especially true in the ADEA context, where a plaintiff can file suit within 60 days of the filing of an EEOC charge, regardless of whether the employer is served or the EEOC takes any action at all.

Here, Trujillo did everything he needed to do to inform the EEOC about the identity of his employer and how to contact it.  His EEOC charge identified Rockledge by the name it did business under in Illinois, and provided the address and phone number of the Illinois store at which he worked.  When the EEOC asked, his prior counsel provided Rockledge's official corporate name and headquarters address.  Nonetheless, inexplicably, the EEOC never contacted anyone using the information Trujillo provided; instead it only contacted an unrelated entity in Texas called Hill Country Holdings, LLC.  The law is clear that — consistent with the remedial purposes of the ADEA — Trujillo cannot be deprived of his day in court because of the EEOC's negligence.

Trujillo's claims also survive for a separate and independent reason: Trujillo satisfies the exhaustion exception established by this Court in *Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130*, 657 F.2d 890, 905–07 (7th Cir. 1981).  Rockledge was on notice of Trujillo's claims.  The human resources executive who orchestrated Trujillo's firing received notice directly from Trujillo's prior counsel that Trujillo was pursuing age discrimination and retaliation claims, and wanted to discuss the possibility of an amicable resolution.  Yet the executive never

14

responded. In addition, Trujillo informed several Rockledge employees, including managers, of his claims of discrimination. Further, his co-Plaintiffs, who were demoted the same month Trujillo was fired, challenged the same discriminatory practices in their EEOC charges and informed Rockledge that they were challenging a pattern and practice of age discrimination. Yet Rockledge refused all efforts to conciliate. Trujillo satisfies the *Eggleston* exception because Rockledge was on notice of Trujillo's claims as well as those of his co-Plaintiffs, refused to conciliate them, and because dismissal of Trujillo's claims would deprive him of the chance for complete redress of his grievances.

## Standard of Review

This Court reviews *de novo* a grant of a motion to dismiss, construing all well-pleaded facts and reasonable inferences from them in the light most favorable to the non-moving party, Trujillo. *Huri v. Office of the Chief Judge of the Cir. Ct. of Cook Cty.*, 804 F.3d 826, 829 (7th Cir. 2015).

## Argument

I.   **The ADEA Should Not Be Construed As Establishing Unnecessary Hurdles for Employees Alleging Age Discrimination.**

A.   **EEOC Charges Should Be Construed Generously, Especially Because the ADEA Does Not Require a Right-to-Sue Letter or EEOC Action.**

The point of the ADEA's charge-filing requirement is not to set up traps for employees. Nor is it to allow employers to rely on purported technicalities to avoid accountability for discrimination. The ADEA, like Title VII, is a "remedial statute, intended to rectify a long history of discrimination." *Babrocky v. Jewel Food Co.*, 773 F.2d 857, 863 (7th Cir. 1985); *EEOC v. Commercial Office Prods. Co.*, 486 U.S.

107, 123–24 (1988) (noting the remedial purpose of the ADEA). "When interpreting the statute, courts should avoid technical constructions." *Babrocky*, 773 F.2d at 863. When employers claim that plaintiffs failed to adequately exhaust their administrative remedies, courts "review the scope of an EEOC charge liberally." *Huri*, 804 F.3d at 831; *see Federal Express Corp. v. Holowecki*, 552 U.S. 389, 406 (2008) (documents filed with the EEOC "should be construed, to the extent consistent with permissible rules of interpretation, to protect the employee's rights and statutory remedies"). It is "particularly inappropriate to undermine the effectiveness of" the ADEA "by dismissing claims merely because the victim of the alleged discrimination failed to comply with the intricate technicalities of the statute." *Husch v. Szabo Food Service Co.*, 851 F.2d 999, 1002 (7th Cir. 1988). "The ADEA is 'humanitarian legislation that should not be construed in a hypertechnical manner.'" *Id.* (quoting *Stearns v. Consolidated Mgmt., Inc.*, 747 F.2d 1105, 1112 (7th Cir. 1984)). Further, the exhaustion requirement is not jurisdictional. *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982); *Doe v. Oberweis Diary*, 456 F.3d 704, 711–12 (7th Cir. 2006); *Stearns*, 747 F.2d at 1111. Thus, a plaintiff's failure to exhaust administrative remedies does not limit the court's jurisdiction and "can often be excused." *Doe*, 456 F.3d at 711–12.

Although there is overlap between the ADEA and Title VII, the statutes are not identical, and their exhaustion requirements differ in important ways, with a direct bearing on this appeal. As the Supreme Court has cautioned, "[w]hile there may be areas of common definition [between Title VII and the ADEA], employees and their

16

counsel must be careful not to apply rules applicable under one statute to a different statute without careful and critical examination." *Holowecki*, 552 U.S. at 393; *see Washington v. Client Network Servs., Inc.*, 590 Fed. App'x 126, 128–29 & n.4 (3d Cir. 2014) (vacating district court's dismissal of ADEA claim on exhaustion grounds, where plaintiff argued, among other things, that the EEOC mishandled his charges). Critically, unlike Title VII, the ADEA does not require that Plaintiff obtain a right-to-sue letter from the EEOC to pursue claims in court. *Compare* 42 U.S.C. § 2000e-5(f)(1) (Title VII) *with* 29 U.S.C. § 626(d)(1) (ADEA). Rather, the ADEA allows a plaintiff to file suit beginning "60 days after a charge" is filed with the EEOC — regardless of whether the EEOC takes any action. 29 U.S.C. § 626(d)(1); *see Hodge v. N.Y. Coll. Of Podiatric Med.*, 157 F.3d 164, 167–68 (2d Cir. 1998) ("Whereas Title VII plaintiffs must receive a 'right-to-sue' letter from the EEOC before filing suit in court, ADEA plaintiffs need only wait 60 days after filing the EEOC charge.") (citations omitted).

Thus, unlike Title VII, the ADEA does *not* require action by the EEOC. Rather, the ADEA "requires the aggrieved individual to file a charge before filing a lawsuit; it does not condition the individual's right to sue upon the agency taking any action." *Holowecki*, 552 U.S. at 403–04. Accordingly, the Supreme Court has held that it "would be illogical and impractical to make the definition of charge dependent upon a condition subsequent over which the parties have no control" — the EEOC's handling (or mishandling) of plaintiff's charge. *Id.* at 404. Congress's decision to require filing with the EEOC — but not to condition plaintiffs' right to

17

bring suit on *action* by an overworked government agency — fits neatly with the fundamental purposes of the ADEA. The ADEA aims to "expedite the processing of age-discrimination claims" and delay is "particularly prejudicial to the rights of 'older citizens to whom, by definition, relatively few productive years are left.'" *Oscar Mayer & Co. v. Evans*, 441 U.S. 750, 757 (1979) (quoting 113 Cong Rec. 7076 (1967) (remarks of Sen. Javits)).

For that reason, Congress elected to allow aggrieved older workers to file suit 60 days after filing an EEOC charge, even though it would be difficult if not impossible to conciliate in such a short period of time. "[W]hile conciliation is encouraged, it is not an inalienable right of a defendant." *Eggleston*, 657 F.2d at 907; *Kopec v. City of Elmhurst*, 966 F. Supp. 640, 648 (N.D. Ill. 1997). "Thus, the ADEA plaintiff can sue in court even if the EEOC has not yet completed its investigation or attempts at conciliation." *Hodge*, 157 F.3d at 168. Even where the EEOC does not act at all on a charge of discrimination, "this cannot affect plaintiff's rights." *Stearns*, 747 F.2d at 1112. By allowing ADEA plaintiffs to file suit quickly, rather than imposing the full apparatus of Title VII exhaustion, Congress chose to emphasize the right of older workers to pursue justice quickly, regardless of how the EEOC handled their charges.

### B. Dismissals Based On Affirmative Defenses Are Disfavored.

To adequately plead a claim, a plaintiff need only provide a "short and plain statement of the claim showing that the pleader is entitled to relief," FED. R. CIV. P. 8(a), to provide defendant "fair notice" of the claim and "the grounds upon which it rests." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 403-04 (7th Cir. 2010). A plaintiff

need not preemptively defeat affirmative defenses; complaints "need not contain *any* information about defenses and may not be dismissed for that omission." *Xechem, Inc. v. Bristol-Myers Squibb Co.*, 372 F.3d 899, 901 (7th Cir. 2004); *see also Chicago Bldg. Design, P.C. v. Mongolian House, Inc.*, 770 F.3d 610, 613–14 (7th Cir. 2014). In considering a Rule 12(b)(6) motion to dismiss, the Court must accept as true all factual allegations. *Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007). The Court must also construe the complaint in the light most favorable to the plaintiff and draw all reasonable inferences in his favor. *Chicago Bldg. Design, P.C.*, 770 F.3d at 612. And though a plaintiff must plead enough facts to state a "claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), that bar is not high in employment discrimination cases. Such plaintiffs may simply allege the "type of discrimination [they] think occur[ed] . . . by whom . . . and when" to survive a motion to dismiss. *Swanson*, 614 F.3d at 405; *see also Huri*, 804 F.3d at 833.

Here, Trujillo's claims were dismissed immediately, without discovery, based on a purported affirmative defense. For the reasons explained further below, this was error.

## II.    Trujillo Exhausted His Administrative Remedies Under The ADEA.

### A.    Trujillo Identified The Correct Entity In His Charge.

The District Court's dismissal of Trujillo's claim should be reversed for a simple reason: Trujillo's EEOC charge named the correct Respondent. He therefore exhausted his administrative remedies under the ADEA.

Rockledge does business in the state of Illinois under the name "Ashley Furniture HomeStore." (Compl. ¶ 36.) That nationally recognized brand name was emblazoned on the store Trujillo managed, and the other stores Rockledge owned in the state. (*Id.*) That is the name that Trujillo's prior counsel put on the cover page of his charge, along with the Illinois phone number and address of the store where he worked. (*Id.* ¶ 37.) Trujillo named the respondent and provided the EEOC correct contact information to serve the charge. (*Id.*) Nothing more was required.

Further, as a non-Illinois LLC, Rockledge was required to register with the Illinois Secretary of State the "Ashley Furniture HomeStore" name under which it did business. Illinois law requires foreign LLCs like Rockledge to register "[t]he name of the foreign limited liability company and, if different, *the name under which it proposes to transact business in this State.*" 805 ILCS 180/45-5(a)(1) (emphasis added). Rockledge registered to do business in the state of Illinois under the assumed name of "Ashley Furniture HomeStore — Rockledge." (Compl. ¶ 36.) In reality, however, Rockledge presents itself to the Illinois public and does business simply as "Ashley Furniture HomeStore," dropping the "— Rockledge" from its name. (*Id.*)

Rockledge's argument for affirmance thus boils down to the following: Although Rockledge complied with Illinois law because it registered to do business under a name just one word different from the actual name it presented to the Illinois public, Trujillo failed to exhaust administrative remedies because he omitted the same single word from the cover page of his EEOC charge. If "close enough" is good

enough for Rockledge's legally required registration with the Illinois Secretary of State, it should be good enough for Trujillo's EEOC charge.  Moreover, in this very case, Rockledge's own lawyers erroneously represented to the EEOC that their client was Stoneledge Furniture LLC, another Ashley-related entity.  (Compl. ¶ 42.) They suffered no consequences for this error, yet they now ask the Court to deny Trujillo the opportunity to have his case heard on the merits because his prior counsel omitted a single word from his EEOC charge.

Denying Trujillo his day in court because he identified Rockledge by the name it actually operates under in Illinois, and one word different from its officially registered assumed name, would contradict this Court's admonition to "avoid technical constructions" of remedial legislation, *Babrocky*, 773 F.2d at 863, and to generously construe an EEOC charge, *Huri*, 804 F.3d at 831. The Court should not hold Trujillo to a higher standard than Rockledge itself (in filing with the Illinois Secretary of State) and its own lawyers (in filing with the EEOC).

Cases addressing similar issues have reached conclusions in line with the principles announced in *Babrocky* and *Huri*.  In *Kopec*, for example, the plaintiff named a city but not its board of commissioners (his actual employer) in his EEOC charge.  Denying the board's motion to dismiss, the court wrote that it was "reasonable for the Plaintiff to believe that the City was his employer" and to "hold Plaintiff to the understanding of the fine-tuned distinctions the Board draws would be to apply an overly formalistic approach that would disserve the intended ends of the ADEA." *Kopec*, 966 F. Supp. at 647-48.  Similarly, in *Virgo v. Riviera Beach*

21

*Assocs., Ltd.*, the Eleventh Circuit affirmed a judgment in favor of a plaintiff whose EEOC charge identified "the name under which [the defendant] transacts business" rather than its corporate name.  30 F.3d 1350, 1359 (11th Cir. 1994); *see also Aguirre v. McCaw RCC Commc'ns, Inc.*, 923 F. Supp. 1431, 1433–34 (D. Kan. 1996) (denying motion to dismiss where plaintiff identified business name rather than official corporate name in her EEOC charge).

Trujillo's EEOC charge identified Rockledge by the Ashley Furniture HomeStore name under which it conducted business in Illinois, and a name virtually identical to the name Rockledge registered with the Illinois Secretary of State.  He provided the EEOC correct contact information for his employer.  He did all he had to do.  Because Trujillo named the correct respondent in his EEOC charge, the core of Rockledge's argument for dismissal crumbles.  The District Court's decision can and should be reversed for that reason alone.

## B.    Trujillo's Claims Should Not Be Foreclosed Due to the EEOC's Errors.

Trujillo's charge was never served on the proper entity only because of a series of egregious errors by the EEOC.  Had the EEOC performed its duty, the charge would have been served on Trujillo's employer and Trujillo would now be litigating the merits of his case.  The law makes clear that the EEOC's negligence cannot deprive Trujillo of his day in court.  For this reason as well, the District Court's ruling should be reversed.

The Complaint details the EEOC's mishandling of Trujillo's charge.  As discussed above, Trujillo identified "Ashley Furniture HomeStore" as Respondent.  He identified the address of the Burbank, Illinois store where he worked, as well as

22

the Chicago-area phone number associated with the store. (Compl. ¶ 37 & Ex. A.)
Even though Trujillo provided contact information that should have easily allowed
the EEOC to provide notice of Trujillo's charge to Rockledge, the EEOC ignored it.
(Compl. ¶ 38.) Instead, the EEOC did not contact anyone using the information
Trujillo provided — either on the cover page of his charge or in subsequent emails
with the EEOC. (Compl. ¶¶ 38, 45.) Rather, the EEOC inexplicably reached out to
an entity named "Hill Country Holdings, LLC" in New Braunfels, Texas. (Compl. ¶
38.) That entity was not called "Ashley Furniture HomeStore," nor was it
registered to do business as Ashley Furniture HomeStore in Illinois, nor did
Trujillo's EEOC charge mention or allude to that entity, or any entity, in Texas.
(*Id.*) Rather, as Rockledge itself pointed out in the District Court, Hill Country is
not (like Rockledge) even an Ashley Furniture corporate affiliate (Dkt. 18); it is
merely a licensee. (Dkt. 44, p. 7.)

The EEOC, not Trujillo, had a statutory and regulatory duty to properly serve
the charge, and it failed in that duty. Under 29 U.S.C. § 626(d)(2), the EEOC is
required to "promptly notify" the employer that a charge has been filed. *See also* 29
C.F.R. § 1626.11 (the EEOC is required to "promptly notify the respondent that a
charge has been filed"). But the EEOC never served the respondent Trujillo
identified, an entity that, according to Trujillo's charge, did business under the
name "Ashley Furniture HomeStore" at a specified address in Burbank, Illinois, and
using a specified Illinois phone number. (Compl. ¶ 37 & Ex. A.) Instead, the EEOC
served Hill Country, an entity located in New Braunfels, Texas. (*Id.* ¶ 38.) That

entity immediately informed the EEOC of its mistake, writing in June 2016 that Trujillo was not employed there, because it had "[n]o [s]tores in Illinois." (*Id.* ¶ 38 & Ex. B., p. 25.) Rather than "promptly" addressing its mistake, as it was required to do under the statute and regulation, the EEOC did nothing for nearly a year. (*Id.* ¶ 39.) Finally, in April 2017, the EEOC contacted Trujillo's prior counsel, who quickly informed the EEOC of Rockledge's official name (in addition to the name under which it did business, which the EEOC was already aware of) and its headquarters address (in addition to the address where Plaintiff worked, which, again, the EEOC was already aware of). (*Id.* ¶ 45; Ex. B, pp. 17–20.) Rather than serve Rockledge, the EEOC immediately closed Trujillo's file and issued a Notice of Right to Sue. (*Id.*) The right-to-sue letter stated "No Employee/Employer Relationship," referring to Hill Country, an entity Trujillo did not name as a Respondent. (*Id.* ¶ 45 & Ex. A.)

Consistent with the remedial purposes of Title VII and the ADEA described above, it is well established that courts must not hold the EEOC's errors against a plaintiff. *See, e.g.*, *Babrocky*, 773 F.2d at 864 n.2 ("Conditioning a plaintiff's right to recover on the omissions of other parties would unduly undermine the remedial purposes of Title VII."); *Holowecki v. Federal Express Corp.*, 440 F.3d 558, 568 (2d Cir. 2006), *aff'd* 552 U.S. 389 (2008) (holding that Plaintiff "should not be held accountable if the EEOC fails to follow through"); *Santos v. Rush-Presbyterian-St. Luke's Med. Ctr.*, 641 F. Supp. 353, 354 (N.D. Ill. 1986) ("The court will not impose a procedural barrier to the plaintiff's claims when the possibility exists that error lies with the administrative agency."). And, when evaluating an argument that a

plaintiff failed to exhaust administrative remedies, courts can look beyond the cover page of the charge. "Allegations outside the body of the charge may be considered when it is clear that the charging party intended the agency to investigate the allegations." *Cheek v. W. and S. Life Ins. Co.*, 31 F.3d 497, 502 (7th Cir. 1994); *see also Delgado v. Merit Sys. Prot. Bd.*, 880 F.3d 913, 926 (7th Cir. 2018); *McDonald v. Adams & Assocs. LLC*, No. 14-cv-4647, 2015 WL 110152, at *2–3 (N.D. Ill. Jan. 7, 2015).

The Supreme Court has squarely rejected an argument similar to Rockledge's — that dismissal was appropriate because the EEOC failed to serve the charge and the employer lacked the opportunity to conciliate. In *Holowecki*, the EEOC failed to serve the charge on the employer, and the employer argued that the Court should condition "an employee's ability to sue[] upon the EEOC's fulfilling its mandatory duty to notify the charged party and initiate a conciliation process." *Holowecki*, 552 U.S. at 403–04. The Court rejected the employer's argument. *Id.* The Court wrote that the employer's proposal was "too artificial a reading of the statute to accept" because the ADEA "requires the aggrieved individual to file a charge before filing a lawsuit; it does not condition the individual's right to sue upon the agency taking any action." *Id.* Moreover, the Court explained that it "would be illogical and impractical" to make an aggrieved employee's chances of relief depend "upon a condition subsequent over which the parties have no control." *Id.* Under *Holowecki*, Trujillo was entitled to file suit 60 days after filing a charge, regardless of what the EEOC did or did not do. Trujillo cannot be deprived of the chance to

have his claims heard on the merits because the EEOC failed to serve the charge on the entity identified by name, address, and phone number in Trujillo's charge, and then identified by its corporate name and address via email.

Applying these principles, courts around the country have consistently refused to dismiss claims because the EEOC erred and failed to serve the proper respondent. "[I]t is the EEOC's, not the plaintiff's, duty to provide the charged party with notice . . . a plaintiff should not be penalized for the EEOC's negligence." *Jones v. U.P.S., Inc.*, 502 F.3d 1176, 1185 (10th Cir. 2007); *see Holender v. Mutual Indus. North Inc.*, 527 F.3d 352, 357 (3d Cir. 2008) (reversing dismissal of age discrimination complaint for failure to exhaust where "the problems [] arose from the EEOC's action"). "To prevent a party entirely from bringing suit because the EEOC may or may not have 'shirked its statutory responsibility would indeed be to provide a hollow remedy and to inflict an undeserved penalty upon an innocent person.'" *McCorvey v. Univ. of Texas Health Sci. Ctr. at San Antonio*, No. 5:16-cv-631, 2016 WL 8904949, at *4–6 (W.D. Tex. Dec. 21, 2016) (quoting *Beverly v. Lone Star Lead Constr. Corp.*, 437 F.2d 1136, 1139 (5th Cir. 1971)). Thus, courts have rejected arguments like Rockledge's, which ask the Court to deny the plaintiff his day in court because the EEOC failed to properly serve his charge. *See, e.g., Jones*, 502 F.3d at 1185; *Edelman v. Lynchburg College*, 300 F.3d 400, 404 (4th Cir. 2002); *Pizio v. HTMT Global Sols.*, 555 Fed. App'x 169, 175 (3d Cir. 2014); *McCorvey*, 2016 WL 8904949, at *4–6; *Queen v. U.S. Sec. Assocs.*, No. 09-cv-1770, 2010 WL 547525, at *3 (E.D. Pa. Feb. 9, 2010); *DeLa Cruz v. Piccari Press*, 521 F. Supp. 2d 424, 431–

32 (E.D. Pa. 2007); *Evans v. Maax-KSD Corp.*, No. 06-cv-2804, 2006 WL 3488708, at *2–3 (E.D. Pa. Nov. 30, 2006); *McClease v. R.R. Donnelley & Sons Co.*, 226 F. Supp. 2d 695, 704 (E.D. Pa. 2002).

Trujillo repeatedly provided the EEOC with all the information it needed to properly serve his charge. Nonetheless, because of the EEOC's errors, the charge was never served. Because the EEOC was responsible for the failure to serve Trujillo's charge, the District Court's decision should be reversed.

### C.    Rockledge Was on Notice of Trujillo's Charge.

As explained above, the District Court's decision should be reversed because (1) Trujillo did properly identify his employer in his EEOC charge and subsequent communications with the EEOC; and (2) the charge was not served on Rockledge because of the EEOC's errors. Even assuming, for the sake of argument, that the Court disagrees, the decision should be reversed for a separate and independent reason: Rockledge was on notice of the complaints raised by Trujillo and therefore is subject to suit.

An employer not named in an EEOC charge cannot avoid liability for failure to exhaust where the employer "has been provided with adequate notice of the charge, under circumstances where the party has been given the opportunity to participate in conciliation proceedings aimed at voluntary compliance." *Eggleston*, 657 F.2d at 905. But "while conciliation is encouraged, it is not an inalienable right of a defendant" and "must be balanced against the availability of complete redress of legitimate grievances . . . especially when demanding full and technical compliance would have no relation to the purposes for requiring those procedures in the first

27

instance." *Id.* at 907 (internal quotation marks omitted). The purpose of this doctrine is to "prevent frustration of the goals of [remedial statutes] by not requiring procedural exactness in stating the charges." *Id.* at 905. "Congress could not have intended that a person filing EEOC charges should accurately ascertain, at the risk of later facing dismissal, at the time the charges were made, every separate entity which may have violated" the civil rights laws. *Id.* at 906.

Thus, an employer may not avoid answering for discrimination on the merits simply by "burying [its] head in the sand" or by turning a blind eye to charges filed against a related entity. *Lopez v. Cardinal Health 411, Inc.*, No. 12-cv-8739, 2013 WL 1768699, at *2–3 (N.D. Ill. Apr. 24, 2013); *see Harris v. Stallman Trucking Co.*, 951 F. Supp. 134, 136 (N.D. Ill. 1997). "Congressional intent . . . is not necessarily effectuated by strict, formalistic insistence that the EEOC Charge accurately list the proper formal name of the respondent." *Lopez*, 2013 WL 1768699, at *3. Thus, employers cannot avoid being held accountable under Title VII or the ADEA by hiding behind an opaque corporate structure and then claiming that they lacked adequate notice of an employee's charge of discrimination that failed to name it in the precisely correct manner.

Applying these standards, courts routinely allow claims to go forward when a plaintiff names on his EEOC charge a closely related entity or trade name of a company, instead of the formal name of the employer. For example, in *Garner v. Knoll Bros. Quick Marts, Inc.*, 962 F. Supp. 1115, 1120 (N.D. Ind. 1997), the plaintiff named in the EEOC charge the store where he worked, rather than the

name of the company that owned it.  The Court concluded that the company "knew or should have known of plaintiff's charges" and denied the defendant's motion to dismiss.  *Id.*  Similarly, in *Lopez*, the plaintiff wrongly named the parent company "Cardinal Health" in her EEOC charge rather than the subsidiary, "Cardinal Health 411," that employed her.  2013 WL 1768699, at *2–3.  The court denied the employer's motion to dismiss, holding that plaintiff had adequately exhausted her administrative remedies despite the technical misnomer.  *Id.*; *see also Rohler v. Rolls-Royce N. Am., Inc.*, No. 1:13-cv-00040, 2014 WL 1256009, at *5–6 (S.D. Ind. Mar. 25, 2014) (denying summary judgment where plaintiff wrongly named subsidiary rather than parent company that employed her); *Jones v. Illinois*, No. 10-cv-7200, 2011 WL 2110278, at *5–6 (N.D. Ill. May 25, 2011) (denying motion to dismiss where plaintiff did not name specific state agency in EEOC charge); *Harris*, 951 F. Supp. at 136 (denying motion to dismiss where plaintiff named wrong one of two related entities).

The result should be the same here, as Trujillo identifies several facts that did, or should have, put Rockledge on notice of Trujillo's allegations.  First, and most simply, Trujillo's former counsel directly informed Lindsey Higgins, the human resources executive who orchestrated Trujillo's firing, of Trujillo's claims of age discrimination and retaliation.  (S.A. 18.)  Trujillo's lawyer asked Higgins to "advise if you would be our point of contact, and if not please direct me as to whom would be our point of contact" and requested that Higgins "call me at your earliest convenience to discuss your interest in resolving these issues."  (S.A. 18, 21.)  In

addition, while his EEOC charge was pending, Trujillo informed a number of his former colleagues at Rockledge, including store managers, that he filed an EEOC charge alleging age discrimination and retaliation.  (Compl. ¶ 46)  Trujillo also alleges that, while his EEOC charge was pending, his current counsel wrote to Rockledge's counsel asserting that their three clients' claims had merit and that Rockledge "has engaged in a pattern and practice of discriminating against" older workers.  Rockledge received this letter and responded.  (Compl. ¶ 40.)  Further, Trujillo submitted a declaration to the EEOC that set forth his treatment, echoing the claims of the other three Plaintiffs, and asked for the EEOC to grant him relief along with the other three.  (Compl. ¶ 41 & Ex. E.)  And Rockledge's outside counsel submitted a response to the other three Plaintiffs' EEOC charges, purportedly on behalf of "Stoneledge Furniture LLC."  (Compl. ¶ 42.)

Taken together, these facts amply support an inference that Rockledge was, or should have been, aware of Trujillo's allegations.  First, Rockledge — including the human resources executive who orchestrated his termination, as well as other managers — had actual notice of his claims of discrimination.  (S.A. 18–21; Compl. ¶ 46.)  Further, the Complaint alleges a similar pattern of mistreatment of older managers; in a matter of days, Rockledge eliminated several older managers, through firings and demotions.  (Compl. ¶ 11.)  Rockledge was aware that three of those managers were planning to, and then did, file charges, and Plaintiffs' counsel informed it of their pattern and practice allegations.  *See Kawczynski v. F.E. Moran, Inc. Fire Prot.*, No. 15-cv-3099, 2015 WL 4871029, at *2 (N.D. Ill. Aug. 13,

2015) (holding that plaintiff exhausted his administrative remedies, despite misnomer of defendant, where the parties' lawyers corresponded).  These facts plausibly support an inference that Rockledge had sufficient notice of Trujillo's allegations to satisfy *Eggleston.*

Further, Rockledge is not prejudiced by the fact that it did not have an opportunity to conciliate Trujillo's specific charge before the EEOC.  As described above, conciliation "is not an inalienable right of a defendant."  *Eggleston*, 657 F.2d at 907.  That is doubly true under the ADEA, which "does not condition the individual's right to sue upon the agency taking any action."  *Holowecki*, 552 U.S. at 403–04.  With the exception of attending a mediation ordered by this Court, Rockledge has refused to mediate or conciliate all four Plaintiffs' claims, from the date they learned of the claims until the present.  (Compl. ¶¶ 40, 42, 44; Dkt. 74.)  Here, like in *Eggleston*, further opportunities for conciliation would have been "futil[e]" where Rockledge has refused to conciliate and instead elected to litigate "with unmatched ferocity."  657 F.2d at 907.  In any event, the EEOC took no action on any of the Plaintiffs' charges, making no effort to investigate or conciliate.  Because "nothing of significance happened while the case was before the EEOC, the unnamed defendant [] could not have been prejudiced by [Plaintiff's] failure to name it."  *Harris*, 951 F. Supp. at 136–37 (quoting *Vakharia v. Sweidsh Covenant Hosp.*, 824 F. Supp. 769, 775 (N.D. Ill. 1993) (overruled on unrelated grounds by *EEOC v. AIC Sec. Investigations, Ltd.*, 55 F.3d 1276, 1280 – 81 (7th Cir. 1995))).

31

Finally, *Eggleston* makes clear that an employer's interest in the opportunity for conciliation must be "balanced against the availability of complete redress of legitimate grievances."  657 F.2d at 907; *see Garner*, 962 F. Supp. at 1119 ("[A] court may consider whether strictly holding a plaintiff to the pleading requirements could deprive her of redress of any legitimate grievances.").  Here, the balance tilts strongly in Trujillo's favor.  Rockledge has made clear that it has no interest in conciliating any of the Plaintiffs' claims or addressing the concerns that brought them to file a lawsuit.  On the other hand, if the District Court's decision is affirmed, Trujillo will be deprived of his opportunity to seek complete redress of his legitimate grievances against Rockledge.

## Conclusion

For all the foregoing reasons, Appellant respectfully requests that this Court reverse the district court's dismissal of his claims and remand the case to the district court for discovery and trial.

Respectfully submitted on behalf of Plaintiff-Appellant Humberto Trujillo,

By:   */s/ Matthew J. Singer*

Linda D. Friedman
Matthew J. Singer (Counsel of Record)
**Stowell & Friedman, Ltd.**
303 W. Madison Street
Suite 2600
Chicago, Illinois 60606
(312) 431-0888

## Certificate of Compliance with Type-Volume Limitation, Typeface Requirements, and Type Style Requirements

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 8,215 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5), as modified by Circuit Rule 32(b), and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word version 2010, with text and footnotes in 12-point Century font.

January 29, 2019           /s/    *Matthew J. Singer*
                                      *Attorney for Plaintiff-Appellant*

## Certificate of Service

I hereby certify that on January 29, 2019, I caused to be electronically filed the foregoing Brief And Required Short Appendix Of Plaintiff-Appellant with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system.  Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.



_s/  Matthew J. Singer_

## Circuit Rule 30(D) Statement

The undersigned attorney hereby certifies, pursuant to Circuit Rule 30(d), that

all material required under Rules 30(a) and (b) is included in the Required Short

Appendix.


_s/  Matthew J. Singer_

## REQUIRED SHORT APPENDIX

<u>Table of Contents</u>

July 9, 2018 Order Dismissing Second Amended Complaint ...................SA 001-003

January 22, 2018 Opinion Dismissing First Amended Complaint...........SA 004-014

October 29, 2018 Order Certifying Case For Appeal Under Rule 54(b) ...SA 015-016

Exhibit A, April 28, 2016 Email to Lindsey Higgins .................................SA 017-021

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| HUMBERTO TRUJILLO, KATARZYNA NOGA, MARY BOYLE, AND ARTHUR BALDUCCI, | ) ) ) | |
| | ) | No. 17 C 05343 |
| *Plaintiffs*, | ) | |
| v. | ) | Hon. Virginia M. Kendall |
| | ) | |
| ROCKLEDGE FURNITURE LLC d/b/a ASHLEY FURNITURE HOMESTORE, | ) ) | |
| | ) | |
| *Defendants*. | ) | |

## ORDER

After this Court granted the Defendant's motion and dismissed Trujillo's First Amended Complaint without prejudice, s*ee* (Dkt. Nos. 37), Plaintiff Humberto Trujillo ("Trujillo") filed this Second Amended Complaint against Defendant Rockledge Furniture LLC d/b/a Ashley Furniture HomeStore ("Rockledge") alleging violations of the Age Discrimination in Employment Act of 1967 ("ADEA") (Count I) and the Illinois Human Rights Act ("IHRA").[1] S*ee* (Dkt. No. 43). For a second time now Rockledge moves for dismissal and again the Court grants its Motion to Dismiss for the reasons that follow. [44.]

## STATEMENT

Many of the facts of this case are well-established in the Court's first order and the Second Amended Complaint essentially repeats most of those facts. Therefore, only a brief recitation and inclusion of newly alleged facts will suffice to frame the issue. However, the facts continue to derive from the amended complaint and are accepted as true for the purpose of reviewing the motion to dismiss. *See Reynolds v. C.B. Sports Bar, Inc.*, 623 F.3d 1143, 1146 (7th Cir. 2010).

Trujillo worked as a manager at a Rockledge store operating under the state-licensed, assumed name "Ashley Furniture HomeStore – Rockledge" in Illinois for 9 years before he was terminated after a negative audit of his store in March 2016. *See* (Dkt. No. 37, at 2-3). Trujillo alleges the store audit was a pretext and that Rockledge actually engaged in a business-wide management-level restructuring with the overall goal of targeting a younger consumer base by having younger-aged managers and employees working at its furniture stores. *Id.* As a result of this company-wide policy older managers – like Trujillo and the other named plaintiffs – were terminated based on their age. *Id.*

On March 16, 2016, Trujillo filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), which was jointly filed with the Illinois Human Rights Commission ("IHRC"). *Id.* The EEOC charge identified Trujillo's employer as "Ashley Furniture HomeStore," and listed the address and phone number where Trujillo worked. *Id.* Trujillo alleges that Rockledge dropped the "Rockledge" from its assumed name and presents itself to the public in Illinois as "Ashley Furniture HomeStore." *See* (Dkt. No. 43, at ¶ 36). Instead of investigating the address or the number listed on the form provided by Trujillo, the EEOC forwarded the charge

---

[1] 29 U.S.C. §§ 621 to 624; 775 ILCS 5 §2-102.

**SA 001**

to a Texas-based company that is also a licensed franchisee of the Ashley Furniture HomeStore brand and, in June 2016, the Texas company responded to the EEOC saying that Trujillo was never an employee.  *See* (Dkt. No. 37, at 3).  One year later the EEOC contacted Trujillo's attorney and asked for more information about his employer, so he provided them with a copy of Truijllo's paystub and mentioned that Trujillo's employer was actually Rockledge.  *Id*.  Additionally, in July 2016, the other three named plaintiffs sent a letter to Rockledge's counsel informing them that they had meritorious claims pending before the EEOC.  *See* (Dkt. No. 43, at ¶ 40).  Trujillo further alleges that he informed a number of Rockledge employees, including store managers, that he had filed an age discrimination complaint against Rockledge.  *Id*. ¶ 46.  To no avail, the EEOC dismissed Trujillo's charge on April 21, 2017 based on the finding that he was never an employee of the Texas-based Ashley Furniture HomeStore.  *See* (Dkt. No. 37, at 4).  In July 2017, Trujillo subsequently sent a letter to the EEOC in support of the other three named plaintiffs in this case requesting that his claims be investigated in support of theirs.  *See* (Dkt. No. 43, at ¶ 41).

As stated in the Court's first order granting the motion to dismiss the first amended complaint, an individual who brings an ADEA claim must first file a charge with the EEOC.  29 U.S.C. § 626(d)(1); *Husch v. Szabo Food Service Co.*, 851 F.2d 999, 1002 (7th Cir. 1988); *Flannery v. Recording Ind. Ass'n of America*, 354 F.3d 632, 637 (7th Cir. 2004).  Further, a party not named in the charging document of an EEOC administrative review is not normally subject to a subsequent lawsuit.  *Alam v. Miller Brewing Co.*, 709 F.3d 662, 667 (7th Cir. 2013); *Small v. Chao*, 398 F.3d 894, 898 (7th Cir. 2005).  This is so to provide the employer with adequate *notice* and an opportunity for *reconciliation* without the need for resorting to the courts.  *Ezell v. Potter*, 400 F.3d, 1041, 1046 (7th Cir. 2005) (emphasis added).  The rare exception to this construct is where a party can prove that "an unnamed party has been provided with adequate notice of the charge, under circumstances where the party has been given the opportunity to participate in conciliation proceedings aimed at voluntary compliance."  *Schnellbaecher v. Baskin Clother Co.*, 887 F.2d 124, 126 (7th Cir. 1989) (citing *Eggleston v. Chicago Journeyman Plumbers' Local Union No. 130*, 657 F.2d 890, 905 (7th Cir. 1981)).  The Court dismissed Trujillo's First Amended Complaint without prejudice because he failed to allege facts sufficient to show that this so-called "*Eggleston* exception" applies to his case.  *See* (Dkt. No. 37, at 8-10).  In doing so, the Court provided him with an opportunity to re-plead and show how Rockledge had adequate notice.  *Id*. at 10 ("Trujillo must do more in his amended complaint, *if possible*, to show how Rockledge knew or should have known of the EEOC charge in order to satisfy the [*Eggleston*] exception") (emphasis added).

Unfortunately, Trujillo fails to allege any new facts that singularly or collectively show how Rockledge was either appropriately named as a party in the EEOC charge, or how they had notice of the EEOC charge that Trujillo filed permitting application of the exception.  Trujillo's new allegations essentially state that he (or his attorney) tried – only after a year with the charge pending – to inform the EEOC that Rockledge was his actual employer and that he subsequently wished for the EEOC to include him in their investigations of other Rockledge employees.  Missing from these new facts is any indication as to why those facts indicate or infer that Rockledge *had or should have had* notice based on those allegations.  Next, Trujillo alleges that he told former co-workers at Rockledge that he filed a charge of age discrimination and unlawful termination against Rockledge and that the other named plaintiffs wrote to Rockledge's legal counsel informing the company of their meritorious discrimination claims.  But as Rockledge points out in its motion to dismiss, these allegations are overly broad and do not point out exactly when Trujillo told these former co-workers during the pendency of the year-long EEOC investigation, nor does

2

**SA 002**

it identify who he told or what exactly he said to them regarding the "charge." *See* (Dkt. No. 44, at 7-8). Additionally, that the other named plaintiffs informed an attorney for Rockledge about *their* meritorious claims adds no indicia of knowledge about Trujillo's claim. Without more there is no correlation between sharing information of a generalized grievance with a co-worker (as Trujillo did), or of sharing a set of claims that are similar in kind (as the other named plaintiffs did), and providing "adequate notice" to one's employer of a pending discrimination charge with the EEOC. Viewed collectively, Trujillo fails to submit any new factual allegations that permit a plausible suggestion or inference that Rockledge had notice of his pending EEOC charge of age discrimination against them. Even if they did, they certainly do not allege the ability by Rockledge to "participate in conciliation proceedings aimed at voluntary compliance" during the pendency of the EEOC charge from March 2016 to April 2017. *See Schnellbaecher*, 887 F.2d at 126.

As for Trujillo's IHRA claim, the Court "may decline to exercise supplemental jurisdiction over a claim [] if the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3); *see also Groce v. Eli Lilly & Co.*, 193 F.3d 496, 501 (7th Cir. 1999) (describing a presumption against retaining jurisdiction of supplemental state law claims when the federal claims are dismissed before trial). In declining to exercise supplemental jurisdiction as a matter of discretion on the grounds that the federal question claim no longer exists in the current matter, the Court adds only that the Illinois Human Rights Commission recently opened, or re-opened, the IHRA charge alleged by the Plaintiff against the Defendant, and this suggests the lack of a "final order" that would entitle the Plaintiff to judicial review. *See* (Dkt. No. 51 at 9; Ex. A); *see also* 775 ILCS 5 §§ 7A-102, 8-111; *see e.g., Rabe v. United Air Lines, Inc.*, 971 F. Supp. 2d 807, 819 (N.D. Ill. 2013) (explaining the federal court's lack of jurisdiction without a final exhaustion order from the IHRC process). Accordingly, the state claim is dismissed without prejudice. *See Greene v. Meese*, 875 F.2d 639, 643 (7th Cir. 1989) (determining that the "proper resolution for failing to exhaust administrative remedies is dismissal without prejudice").

In sum, the Motion to Dismiss filed by Rockledge is granted and Trujillo's Second Amended Complaint is dismissed without prejudice. [44.]

_____
Hon. Virginia M. Kendall
United States District Judge

Date: July 9, 2018

3

**SA 003**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| HUMBERTO TRUJILLO, KATARZYNA NOGA, MARY BOYLE, AND ARTHUR BALDUCCI, | ) ) ) | |
| | ) | No. 17 C 05343 |
| *Plaintiffs*, | ) | |
| v. | ) | Hon. Judge Virginia M. Kendall |
| | ) | |
| ROCKLEDGE FURNITURE LLC d/b/a ASHLEY FURNITURE HOMESTORE, | ) ) | |
| | ) | |
| *Defendants*. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Humberto Trujillo ("Trujillo"), Katarzyna Noga, Mary Boyle and Arthur Balducci filed a two-count complaint against Defendant Rockledge Furniture LLC d/b/a Ashley Furniture Homestore ("Rockledge"), alleging they were discriminated due to their age in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621 to 624 (Count I) and the Illinois Human Rights Act ("IHRA"), 775 ILCS 5/2-102 (Count II). (Dkt. No. 24.) Pursuant to the Court's participation in the Mandatory Initial Discovery Pilot Project, Rockledge answered and also filed a Motion to Dismiss for failure to state a claim against Trujillo pursuant to Fed. R. Civ. P. 12(b)(6). (Dkt. No. 26.) The motion to dismiss is granted and Plaintiff is given leave to file an amended complaint if possible. [26.]

## BACKGROUND

The following facts derive from the complaint and are accepted as true for the purposes of this motion. *See Olson v. Champaign County, Ill.*, 784 F.3d 1093, 1095 (7th Cir. 2015). Also accepted are facts and documents provided in the opposition to the motion to dismiss that are consistent with the pleadings. *See Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012).

1

## I.  Trujillo's Employment History with Rockledge

Trujillo worked for Rockledge in some form of management between 2007 and 2016.[1] (Dkt. No. 24, ¶¶ 13, 14.)  The Defendant is registered with the Illinois Secretary of State as "Rockledge Furniture LLC," and is a subsidiary of Ashley Furniture Industries, Inc., both of which are located in Wisconsin.  (*Id.* ¶¶ 4-5.)  Rockledge is also registered in Illinois under the following assumed names: "Ashley Furniture Outlet," "Ashley Sleep," and "Ashley Furniture HomeStore – Rockledge."  (*Id.* ¶ 5.)  In 2015, Rockledge underwent a corporate reorganization that involved the hiring of new employees and reassigning or removing some of its existing employees at the management level.  (*Id.* ¶¶ 10, 11.)

As a part of this reorganization, Trujillo alleges that Rockledge wanted to hire millennials and younger individuals for management-level positions "at the expense of older managers – regardless of how successful the older managers had been during their tenure at Ashley."  (*Id.* ¶ 10.)  Trujillo also alleges that he was improperly turned down for a promotion to Regional Manager within Rockledge as ineligible despite meeting the prerequisites listed in the job-posting and that Rockledge later removed the job description from its computer system.  (*Id.* ¶ 33.)  Trujillo learned of Rockledge's desire to hire younger managers at a December 2015 corporate meeting.  (*Id.* ¶ 16.)  The meeting included presentations by the President in charge of the Midwest market, the Executive Vice President of Retail Operations for the entire U.S. market, a hiring recruiter – with every one of their presentations emphasizing the need to hire younger people, (*Id.* ¶¶ 17, 18, 19.)

Around the same time, Rockledge transferred a young sales manager ("Sales Manager") to the same store where Trujillo served as the Store Manager.  (*Id.* ¶ 23.)  Trujillo alleges that

---

[1] The first amended complaint added three additional plaintiffs, but the motion to dismiss focuses solely on Humberto Trujillo and so the Court addresses the facts and allegations that relate solely to Trujillo.

**SA 005**

from the onset of his supervision over the Sales Manager she routinely failed to perform her job responsibilities and failed to show up for work shifts. (*Id.* ¶¶ 24, 25, 28.) He also alleges that the Sales Manager communicated that "she didn't care if she lost her job," and that on at least one occasion she did not report to a meeting because she was drinking the night before. (*Id.* ¶¶ 25, 26.) Trujillo raised these issues with Rockledge's corporate management both verbally and in writing on more than one occasion. (*Id.* ¶¶ 25, 29.) Instead of a reprimand, the Sales Manager received a promotion from Rockledge and then resigned a few days later. (*Id.* ¶¶ 27,28.) Then, in March 2016, Rockledge's Human Resources office conducted a store audit of Trujillo's location resulting in his termination by Rockledge. (*Id.* ¶ 30.)

## II.    Trujillo's Employment Discrimination Charge with EEOC

On March 16, 2016, Trujillo filed a charged of discrimination with the Equal Employment Opportunity Commission ("EEOC"), which his counsel filed jointly with the Illinois Human Rights Commission ("IHRC"), and he received a Notice of a Right to Sue. (*Id.* ¶ 34.) The EEOC charge identified Trujillo's employer as "Ashley Furniture HomeStore," and listed the store address and phone number where Trujillo worked. (*Id.*, ¶ 34; Dkt. No. 30, at 2.) Instead of investigating the address or the number listed on the form provided by Trujillo, the EEOC forwarded the charge to a Texas-based company that is also a licensed franchisee of the Ashley Furniture HomeStore brand and, in June 2016, the Texas company responded saying that Trujillo was never an employee. (Dkt. No. 30, at 3.) Then, in April 2017, the EEOC contacted Trujillo's attorney and asked for more information about his employer, which resulted in the attorney sending in a copy of Trujillo's paystub and his mentioning to the EEOC that the employer was actually Rockledge. (*Id.*) In the interim, the other three Plaintiffs in this case properly filed employment discrimination charges with the EEOC and the IHRC against Rockledge. (*Id.*) Regardless of the new information, the EEOC dismissed Trujillo's charge on

3

**SA 006**

April 21, 2017; indicating that the reason for doing so was that he was never an employee of the Texas-based Ashley Furniture HomeStore.  (*Id*. at 3-4.)

Trujillo filed this suit asserting claims of employment discrimination and retaliation based on his age in violation of federal and state law.  (Dkt. No. 24, ¶¶ 74, 85-86.)  He seeks declaratory relief, as well as compensatory and punitive damages.  (*Id*. at 16.)

## STANDARD OF REVIEW

Rule 12 (b)(6) requires dismissal of complaints that fail to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). On a motion to dismiss pursuant to Rule 12(b)(6), a court must accept as true all of the well-pled allegations in the complaint and construe all reasonable inferences in favor of the plaintiff. *See Killingsworth v. HSBC Bank*, 507 F.3d 614, 619 (7th Cir. 2007). To state a claim upon which relief may be granted, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Detailed factual allegations" are not required, but the plaintiff must allege facts that, when "accepted as true … state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (internal quotations omitted). In analyzing whether a complaint meets this standard, the "reviewing court [must] draw on its judicial experience and common sense." *Id*. at 678. When the factual allegations are well pled, the Court assumes their veracity and then determines if they plausibly give rise to an entitlement to relief. See *Id*. at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Yeftich v. Navistar*, 722 F.3d 911, 915 (7th Cir. 2013).

4

**SA 007**

## DISCUSSION

Rockledge argues for dismissal of Trujillo's ADEA claim for failure to exhaust his administrative remedies with the EEOC prior to filing this lawsuit.  (Dkt. No. 26, ¶ 2.)  In essence, Rockledge claims it was not named as a party to Trujillo's EEOC charge, which is required for an ADEA suit to proceed against a particular defendant.  (Dkt. No. 27, at 5-6.)  Furthermore, Rockledge argues that it does not fall within any of the exceptions to that requirement.  (*Id*. at 6-7.)  Since Trujillo never named Rockledge, he failed to exhaust his state agency remedies and he never received a Right to Sue letter from the Illinois Department of Human Rights ("IDHR").  (*Id*. at 7-8.)

### I.     Trujillo's Failure to Exhaust the Administrative Remedies Under the ADEA

#### a.  Failure to Name Rockledge

Any individual seeking to file a lawsuit alleging an ADEA claim must first file a complaint with the EEOC and then wait sixty days from the filing date before bringing a civil action.  29 U.S.C. § 626(d)(1); *Husch v. Szabo Food Service Co.*, 851 F.2d 999, 1002 (7th Cir. 1988); *Flannery v. Recording Ind. Ass'n of America*, 354 F.3d 632, 637 (7th Cir. 2004) (requiring employee to file a charge with EEOC prior to filing lawsuit in court in ADA and ADEA disputes).  Additionally, in states like Illinois that have their own employment discrimination laws, an individual must file first with the state agency or dual-file with the state agency and the EEOC before filing a civil action.  29 U.S.C. § 633(b); *Husch*, 851 F.2d at 1002. The time for filing with the EEOC is 300 days from the alleged discrimination.  *Id*.  The parties do not dispute whether Trujillo dual-filed a charge with the EEOC and with IDHR, and he alleges as much in the complaint.  (Dkt. No. 1, ¶ 34; Dkt. No. 27, at 2.)  The issue raised by Rockledge, however, is whether Trujillo named Rockledge in his EEOC charge.

5

**SA 008**

In matters involving administrative review by the EEOC, a party not named in the charging document is not normally subject to subsequent civil suit. *Alam v. Miller Brewing Co.*, 709 F.3d 662, 667 (7th Cir. 2013) (defendant in a Title VII lawsuit must be named as a party in the underlying EEOC charge); *Small v. Chao*, 398 F.3d 894, 898 (7th Cir. 2005) (ADEA suits are also subject to the requirement that the employer be named in the EEOC charging document). The purpose of this requirement is so that the employer has "some warning of the conduct about which the employee is aggrieved and affords the EEOC and the employer an opportunity to attempt conciliation without resort to the courts." *Ezell v. Potter*, 400 F.3d 1041, 1046 (7th Cir. 2005). Being that this matter is before the Court on a motion to dismiss, the Court construes Trujillo's facts as true and requires that he merely identify the type of discrimination, by whom, and when it occurred. *Swanson v. Citibank, N.A.*, 614 F.3d 400, 405 (7th Cir. 2010) (outlining the pleading standard in employment discrimination cases).

Trujillo argues that he cured the EEOC charge one year after the original filing when his attorney sent one of Trujillo's paystubs to the EEOC and informed the Commission of the proper defendant by name. (Dkt. No. 30, at 7.) This, he argues, supports his claim that Rockledge was properly noticed thereby satisfying the exhaustion process required to bring this suit. (*Id*. at 8.) In support of his curative theory Trujillo cites two decisions by this Court where EEOC charges did not identify causes of action against a defendant, but where subsequent suits were permitted to proceed. *Johnson v. Bellwood Sch. Dist. 88*, 2016 WL 3476660 (N.D. Ill. 2016) (Kendall, J.); *Thompson v. Comm. Assistance Programs*, 2015 WL 5093784 (N.D. Ill. 2015) (Kendall, J.). Yet both of these cases are distinguishable based on the nature of what was omitted in the original EEOC charge.

**SA 009**

In *Johnson*, the plaintiff did not identify his discrimination claim in the original EEOC charge, but this Court held that because the discrimination claim was reasonably related to the retaliation claim identified in the charge the plaintiff exhausted his administrative remedies. *Johnson*, 2016 WL 3476660, at *3. Similarly in *Thompson*, this Court found that the plaintiff exhausted her failure to accommodate claim by sending a supplemental email to the EEOC despite never having listed that claim in the original charge because courts may look to documents beyond the charging documents to determine applicable claims. *Thompson*, 2015 WL 5093784, at *3. Although both cases stand for the proposition that the exhaustion of administrative remedies need not rely solely on the "body of the charge," they differ from the current matter because the defendants in *Johnson* and *Thompson* both had notice and the ability to participate in voluntary conciliation. These cases do not apply because the issue is not about whether Trujillo raised particular claims; rather, the issue is whether Rockledge ever received the required notice of a charge of discrimination. *See Schnellbaecher v. Baskin Clothing Co.*, 887 F.2d 124, 127 (7th Cir. 1989) ("[t]he purpose of the requirement of filing a charge before the EEOC is twofold. First, it serves to notify the charged party of the alleged violation. Second, it gives the EEOC an opportunity for conciliation, which effectuates Title VII's primary goal of securing voluntary compliance with its mandates." (citing *Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130, U.A.*, 657 F.2d 890, 905 (7th Cir. 1981)). Even though Trujillo supplied additional information identifying Rockledge as the employer, the facts alleged in the complaint, and in Trujillo's reply to the motion to dismiss, do not plausibly indicate that Rockledge ever had actual notice of the charge.

It is undisputed that Rockledge was never named as a party in his EEOC charge. The named defendant in his EEOC filing was "Ashley Furniture HomeStore." (Dkt. No. 24, ¶ 34.)

**SA 010**

As noted, Rockledge operates in Illinois as "Rockledge Furniture LLC" or – as registered with the Illinois Secretary of State – under its assumed names: "Ashley Furniture Outlet," "Ashley Sleep," or "Ashley Furniture HomeStore – *Rockledge*." (Dkt. No. 30, Ex. A) (emphasis added). Thus, although Trujillo listed a Rockledge-owned location by address and phone number on the EEOC charging document, he did not accurately identify Rockledge either by its registered actual or assumed names. Trujillo's admits as much by incorrectly identifying "Ashley Furniture HomeStore" as one of Rockledge's assumed names. (Dkt. No. 24, ¶ 34.) As a result of naming Ashley Furniture HomeStore, the EEOC investigation focused on a Texas-based company that also is a franchisee of Ashley Furniture products. (Dkt. No. 30, at 3.) It cannot be assumed that Rockledge had any knowledge of Trujillo's grievances especially since the entity he filed the grievance against informed the EEOC that he did not work there. Trujillo argues instead that Rockledge had notice of his EEOC charge, therefore resulting in an exception to the proper charging process, and so he should be able to proceed. (*Id*. at 10-12.)

### b. Exceptions to Notice Do Not Apply

There are exceptions to the requirement that a party be named in the EEOC charge in order for that party to be named in a subsequent civil action. *Eggleston*, 657 F.2d at 905. This occurs where it can be shown that an unnamed party in fact was provided with actual notice of the charge. *Id*. Trujillo argues that Rockledge knew or should have known of the underlying EEOC charge because the other three Plaintiffs properly named Rockledge in their respective EEOC charges in March 2017. (Dkt. No. 30, at 10-12.)

Trujillo cites as support for his position the *Eggleston* case where the court permitted the lawsuit to proceed against a defendant that was not named in the EEOC charge. *Id*. The reasoning in *Eggleston* does not apply here because here the Defendant had no affiliation with the incorrectly named defendant in the EEOC charge unlike in Eggleston where the unnamed

**SA 011**

defendant had some affiliation or proximity to the party named in the EEOC charge. *Eggleston*, 657 F.2d 890, 906 (the unnamed union committee was part of the union named in the EEOC charge); *see also Liberales v. Cook County*, 709 F.2d 1122 (7th Cir. 1983) (unnamed heads of state entities were part of the named state entities in the EEOC charge); *Pauls v. Elaine Revell, Inc.*, 571 F.Supp. 1018 (N.D. Ill. 1983) (unnamed defendants were the president and chairman of the company named in the EEOC charge); *Garner v. Knoll Bros. Quick Marts, Inc.*, 962 F.Supp. 1115 (N.D. Ind. 1997) (unnamed entity was owned by the entity).

In the current matter, although Ashley Furniture HomeStore is almost identical to an assumed registered name for Rockledge in Illinois, the named entity that the EEOC pursued had no affiliation or connection to Rockledge. It is not as though the Texas-based company, when contacted by the EEOC to verify Trujillo's employment, was related to, a subsidiary of, or under working relationship with Rockledge. That the EEOC did not follow up on the information provided by Trujillo's former counsel, instead opting to dismiss the charge, is of no consequence to the fact that Rockledge was never contacted about Trujillo's EEOC charge. At the very least, information regarding notice of the charge by Rockledge is not readily identified in the complaint, or in any of the documents or responses related to it. Further, the fact that Rockledge received notice of EEOC charges filed by other individuals - over a year after Trujillo's charge - is neither persuasive nor is it supported with any case law suggesting that this qualifies as constructive notice.

At this point, it is too late for Trujillo to file a new charge with the EEOC. See 29 U.S.C. § 633(b) (a claimant has 300 days to file a charge with the EEOC from the date of the alleged discrimination). It is also too late to amend the charge because a Notice of Right to Sue issued, which generally terminates any further proceedings of any charge filed by an individual. See 29

**SA 012**

C.F.R. § 1601.28(a)(3) (the "issuance of a notice of right to sue shall terminate further proceeding of any charge that is not a Commissioner charge …").  Given that the underlying purpose of the filing requirement is to provide the defendant with notice of a grievance against it, and a chance for reconciliation, Trujillo must do more in his amended complaint, if possible, to show how Rockledge knew or should have known of the EEOC charge in order to satisfy the exception to the general rule that the party must be a named defendant in the administrative proceeding.  Otherwise, his only other option is to allege some other form of relief from enforcement of the statutory filing period for ADEA charges filed with the EEOC.  *See, e.g., Chakonas v. City of Chicago*, 42 F.3d 1132, 1135 (7th Cir. 1994) (describing and applying theories of equitable relief in tolling the time to file a complaint with the EEOC under the ADEA).

## II.     Trujillo's Failure to Exhaust Under the IHRA

As to Trujillo's state law claim under the IHRA, the Court need not address whether the issues of naming a proper defendant, or whether proper exhaustion of administrative remedies occurred at this time.  That is because the state law claim is before the Court based on supplemental jurisdiction.  28 U.S.C. § 1367.  Therefore, based on the dismissal of Trujillo's federal claim, his state claims should be dismissed as well.  *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966).  As Trujillo suggests in his response to the motion to dismiss, the dismissal is without prejudice and he has the option of filing an amended complaint on the state claim utilizing the Court's diversity jurisdiction.  (Dkt. No. 30, at 14.)

10

**SA 013**

## <u>CONCLUSION</u>

Accordingly, the motion to dismiss for failure to state a claim [26] is granted.  Trujillo's

ADEA claim (Count I) and his IHRA claim (Count II) are dismissed without prejudice.

Dated:  January 22, 2018

Hon. Virginia M. Kendall
United States District Judge

SA 014

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

|  |  |  |
|---|---|---|
| HUMBERTO TRUJILLO, KATARZYNA NOGA, MARY BOYLE, and ARTHUR BALDUCCI, | ) ) ) ) ) | 17 C 5343 |
| *Plaintiffs*, | ) | Hon. Virginia M. Kendall |
| v. | ) ) | |
| ROCKLEDGE FURNITURE LLC d/b/a ASHLEY FURNITURE HOMESTORE, | ) ) ) | |
| *Defendant*. | ) | |

## ORDER

Before the Court is Plaintiff Humberto Trujillo's Motion for Entry of a Rule 54(b) Order, seeking an Order allowing him to immediately appeal this Court's ruling dismissing his claims. (Dkt. 56). Defendant does not oppose the Motion. (*See* Dkt. 61 at 3).

Federal Rule of Civil Procedure 54(b) authorizes the Court to "'direct entry of a final judgment as to one or more, but fewer than all, claims or parties,' but only if 'there is no just reason for delay.'" *King v. Newbold*, 845 F.3d 866, 868 (7th Cir. 2017) (quoting Fed. R. Civ. P. 54(b)). Before entering final judgment under Rule 54(b), the Court must determine (1) "whether the order in question is truly final as to one or more claims or parties" and (2) if it is, "whether there is any good reason to delay entry of final judgment until the entire case is finished." *Id.* (citing *Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 7–8 (1980)).

The Court's July 9, 2018 Order dismissing Trujillo's ADEA and IHRA claims without prejudice constitutes a "final judgment" for purposes of Rule 54(b). Trujillo and three other Plaintiffs filed suit against Defendant Rockledge Furniture LLC each alleging two counts of age discrimination and retaliation. one under the Age Discrimination in Employment Act of 1967 ("ADEA") and one under the Illinois Human Rights Act ("IHRA"). (Dkt. 43). Rockledge challenged only Trujillo's claims and the Court has dismissed these claims twice. The Court granted Rockledge's first Motion to Dismiss, holding that Trujillo failed to exhaust his administrative remedies with regard to the ADEA claim and declining to exercise supplemental jurisdiction over his remaining the state law IHRA claim. (Dkt. 54). The Court granted Trujillo leave to amend his ADEA claim "if possible" but Trujillo failed to do so. The Court granted Rockledge's Motion to Dismiss Trujillo's claims as re-alleged in the Second Amended Complaint on the same grounds, finding Trujillo failed to exhaust his administrative remedies as to the ADEA claim and declining to exercise supplemental jurisdiction over Trujillo's only remaining state law IHRA claim. (Dkt. 54). The Court dismissed both claims without prejudice, as is proper where dismissal is due to a failure to exhaust or declining to exercise supplemental jurisdiction. (*Id.*); *see Walker v. Thompson*, 288 F.3d 1005, 1009 (7th Cir. 2002) ("Dismissal for failure to exhaust is

**SA 015**

without prejudice and so does not bar the reinstatement of the suit unless it is too late to exhaust."); *Hagan v. Quinn*, 867 F.3d 816, 830 (7th Cir. 2017) ("The usual practice in this circuit is for district courts to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial.") (quotation omitted). But "the test for finality is not whether the suit is dismissed with prejudice or without prejudice" but "whether the district court has finished with the case." *Hill v. Potter*, 352 F.3d 1142, 1144 (7th Cir. 2003). Here, the Order provided no leave to further amend or refile either claim in this Court, *c.f. On Command Video Corp. v. Roti*, 705 F.3d 267, 270 (7th Cir. 2013) (decision is not "final" if the court dismissed the claim with leave to refile), and the day after issuing its Order, the Court entered Judgment in this case in favor of Rockledge and against Trujillo. (Dkt. 55). This Court is finished with these claims.

The Court finds no just reason to delay entry of final judgment on Trujillo's claims. Rule 54(b) "allows appeal without delay of claims that are truly separate and distinct from those that remain pending in the district court, where 'separate' means having minimal factual overlap." *Lottie v. W. Am. Ins. Co., of Ohio Cas. Grp. of Ins. Companies*, 408 F.3d 935, 939 (7th Cir. 2005). Delay is appropriate, however, where the claims are not truly separate such that the appellate court would "have to go over the same ground when the judgment terminating the entire case was appealed." *Ty, Inc. v. Publications Int'l Ltd*., 292 F.3d 512, 515 (7th Cir. 2002). Trujillo's claims are "separate" from the remaining claims for purposes of Rule 54(b). The issue of whether Trujillo properly exhausted all administrative remedies with regard to his individual ADEA and IHRA claims is not implicated in any of the individual Plaintiffs' remaining claims and this Court need not revisit its ruling on Trujillo's claims to resolve any others going forward. Because none of the claims remaining before this Court are "substantively intertwined" with the exhaustion issue Trujillo seeks to appeal, there is no just reason for delaying entry of final judgment. *See Gen. Ins. Co. of Am. v. Clark Mall Corp*., 644 F.3d 375, 380 (7th Cir. 2011).

Accordingly, the Court grants Trujillo's Motion for Entry of a Rule 54(b) Order (Dkt. 56).


Hon. Virginia M. Kendall
United States District Judge

Date: October 29, 2018

Exhibit A

Message
| | |
|---|---|
| **From:** | leslie.cordero@spielbergerlawgroup.com [leslie.cordero@spielbergerlawgroup.com] |
| **Sent:** | 4/28/2016 3:43:39 PM |
| **To:** | Higgins, Lindsey (Gregory) [GHiggins@Ashleyhomestore.com] |
| **Subject:** | Fwd: Humberto Trujillo/Ashley Furniture HomeStore (CLID: 160388754, Trujillo, Humberto) |
| **Attachments:** | 28044011_H. Trujillo Demand (1).pdf |

Good Afternoon,

I am following up to my last email. Please advise if you would be our point of contact, and if not please direct me as to whom would be our point of contact?

Thanks,
Leslie Cordero

**Leslie Cordero**
Legal Assistant
**Address:** 202 S. Hoover Blvd. | Tampa, FL 33609
**Tel.** (800) 965-1570 Ext. 124
**Fax:** (866) 580-7499
**Email:** leslie.cordero@spielbergerlawgroup.com

This correspondence may contain information that is confidential, proprietary or & non-public personal information, as that term is defined in the Gramm-Leach-Bliley Act (collectively, Confidential Information). The Confidential Information is disclosed conditioned upon your agreement that you will treat all Confidential Information confidentially and in compliance with applicable law, ensure that such information is not used or disclosed except for the limited purpose for which it is being provided and will notify and cooperate with Spielberger Law Group, LLC. regarding any requested disclosure or any unauthorized disclosure or use of any Confidential Information. By accepting and reviewing the Confidential Information you agree to indemnify Spielberger Law Group, LLC. against any losses or expenses, including attorney's fees that Spielberger Law Group, LLC. may incur as a result of any unauthorized use or disclosure of the Confidential Information due to your acts or omissions. If this correspondence is received by a party other than the intended recipient, you are requested to immediately notify us of the erroneous delivery and return to us all information so delivered immediately.

**From:**



**SPIELBERGER**
**L A W   G R O U P**

ATTORNEYS AT LAW

James Spielberger ‡†
Gary Martoccio ✳ ✻
Gabrielle Klepper ✳† ø ★✧
Jason Allan Watson ✳✻✧
Jeffrey Del Rio ✳✧‡
Jordan C. Sullivan ‡ ✳
Philip Kegler ✳ ❂
Thomas Daugustinis ✳ ✻
Trescot Gear ✳
Elena Adang ✳

April 5, 2016

Ashley Furniture Industries, Inc.
Attention:  Human Resources Director/General Counsel
1 Ashley Way
Arcadia, WI 54612

OFFICES

Charleston
Tampa
Chicago ᵗ
Atlanta ᵗ
Charlotte ᵗ
Raleigh ᵗ
Orlando ᵗ
Jacksonville ᵗ
Ft. Lauderdale ᵗ
Austin ᵗ
Houston ᵗ
Dallas ᵗ
Philadelphia ᵗ
Pittsburgh ᵗ
ᵗ by apt. only

### RE: Your former employee Humberto Trujillo

Dear Sir or Madam:

Humberto Trujillo has retained this law firm to represent him in regards to his separation from Ashley Furniture Industries, Inc. (hereinafter referred to as "Ashley Furniture"). Please direct all future correspondence, communications, and documents regarding this matter to our firm. The purpose of this letter is to summarize briefly my understanding of what transpired and to determine your interest in engaging in a good faith effort to resolve this matter.

As you know, Mr. Trujillo began working for Ashley Furniture in July 2007. Throughout his tenure with Ashley Furniture, Mr. Trujillo was a hard working employee who diligently performed his duties on a regular basis. Our investigation indicates that Ashley Furniture's treatment and termination of Mr. Trujillo violates federal law.

Ashley Furniture treated Mr. Trujillo is a disparate manner as compared to similarly situated younger employees and targeted him for termination based on false allegations that he engaged in improper conduct. The false allegations in which facilitated Mr. Trujillo's termination were raised by the Ashely Furniture's Human Resource Manager, Delynn Freigo, in retaliation after Mr. Trujillo reported her for unethical behavior. Additionally, as one of the most senior employees at his store, Mr. Trujillo was discriminated against by Ashley Furniture and subsequently terminated based on his age. Ashley Furniture openly indicated in a recent management meeting that they were seeking to recruit new talent, specifically younger employees.

Unfortunately, Ashley Furniture's recent conduct appears to be in direct violation of the Age Discrimination in Employment Act (ADEA). The ADEA clearly outlines the wrongful and prohibited acts of age discrimination in the workplace. The following statutory language describes the unlawful conduct of an employer as it relates to age discrimination claims under the ADEA:

OF COUNSEL:
❖

ONLY LICENSED IN:
† SC
‡ GA
✛ NC
✳ IL
ø TX
✻ FL
★ AZ
✤ PA
✧ CO
❂ AL

DEF 002943

**SA 019**



It shall be unlawful for an employer-

> *(1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age;*
> *(2) to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age; or*
> *(3) to reduce the wage rate of any employee in order to comply with this chapter.[1]*

The ADEA provides the employee the following remedies as a result of an employer's violations:

> *(b) Enforcement; prohibition of age discrimination under fair labor standards; unpaid minimum wages and unpaid overtime compensation; liquidated damages; judicial relief; conciliation, conference, and persuasion.[2]*

In light of Ashley Furniture's conduct, Mr. Trujillo seeks the following: (1) a fair and reasonable settlement for back wages, future wages, non-pecuniary damages, benefits, and attorneys' costs and fees; and (2) a positive letter of reference.

This letter serves as formal notice of your ongoing legal duty to preserve any and all information relevant to the facts surrounding this claim. Your duty to preserve evidence extends to the following: 1) business records, 2) paper, digital, or electronic files, 3) data generated by and/or stored on you or your client's computers and storage media (e.g., hard disks, floppy disks, backup tapes), 4) any other electronic data, such as: voice mails, text messages, emails, digital/analog audio recordings, 5) any related physical evidence, and 6) any form of video recordings (please prevent the automatic deletion of video footage by preprogrammed deletion cycles). Violations of the legal duty described in this notice can result in severe sanctions being imposed by the Court for spoliation of actual evidence or potential evidence.

---

[1] Age Discrimination in Employment Act § 623(a).
[2] Age Discrimination in Employment Act § 626

DEF 002944

**SA 020**



Please note that our investigation of Mr. Trujillo's claims is ongoing.  So that I can document our file, please send me a written response to this letter within five days.  Also, please call me at your earliest convenience to discuss your interest in resolving these issues.  You can contact me directly at (800) 965-1570 ext. 124.

Best regards,

Gary Martoccio
gary.martoccio@spielbergerlawgroup.com

CC: Humberto Trujillo

DEF 002945

**SA 021**